[No. A113889. First Dist., Div. Four. June 11, 2007.]

THE PEOPLE, Plaintiff and Respondent, v.
AARON TIMMS, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part II.C.

**COUNSEL**

Victoria H. Stafford, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Rene A. Chacón and Arthur P. Beever, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**REARDON, J.**—Appellant Aaron Timms, convicted of voluntary manslaughter,[1] challenges the instructions on voluntary intoxication and reasonable doubt as well as the constitutionality of Penal Code[2] section 22. We affirm.

## I. FACTS

In October 2003, appellant and his wife Valerie Estrada were homeless and slept in a ravine (called the "canal") that ran along the back of Kaiser

---

[1] Appellant was originally charged by information with murder, with allegations of inflicting great bodily injury and serving a prior prison term. At the close of trial, the court granted his Penal Code section 1118.1 motion to dismiss the charge of first degree murder. The jury convicted him of voluntary manslaughter, and found true the great bodily injury enhancement. The court found true the prior prison term allegation. The court sentenced appellant to seven years in state prison: six years (middle term) for the manslaughter plus one consecutive year for the prior prison term.

[2] All statutory references are to the Penal Code.

Convention Center in Oakland. They met Richard Aguilar and Nevin Dusevic[3] at the canal and became friends. On October 21, 2003, Dusevic was expecting a direct deposit to his bank account. He offered to rent a motel room for himself, appellant and Aguilar so the three could watch television, drink and relax.

On October 22, 2003, Nevin, with his friends, tried to withdraw money from his account but there was "a problem" with the money. The subject of the possibility of Estrada getting into his ATM card came up.

In any event, the men rented a room in a motel on 6th Street. There, they ate Chinese food and drank beer and brandy. At one point appellant left to find his wife and bring her to the motel.

When Estrada arrived she was upset. She bickered with Nevin, asking why he accused her of withdrawing money from his account. Estrada and appellant started arguing and Estrada began pushing appellant. Appellant tried to restrain her. Eventually appellant grabbed Estrada by the ponytail and slapped her, then knocked her head into the wall four or five times. At some point Estrada tried to hit appellant.

The next morning Estrada was in the same position, slumped by the wall. Appellant tried to revive her but she was dead. Appellant called the paramedics. He was not there when the authorities arrived but turned himself in to the police a few hours later and admitted striking his wife. Estrada died of multiple blunt injuries to the head.

### The Defense

Clinical Psychologist Alan Ledford testified that Estrada had been admitted to a county mental health institution in November 2002 on an emergency psychiatric detention. Estrada reported to the police that she had stabbed her husband. Estrada's blood-alcohol level was .16. She was diagnosed with an adjustment disorder.

Appellant's blood-alcohol level was tested on October 23, 2003, shortly after 7:00 p.m. Nothing was detected.

Kurt Anderson was a loss prevention agent for Sears in Oakland in March 2003. He was called to assist another agent in arresting Estrada for shoplifting. Drunk and belligerent, she threatened some employees and kicked someone in the shins. She had vodka or gin in her purse.

---

[3] The parties stipulated that Dusevic died prior to trial.

*Rebuttal*

Appellant and Estrada lived in a hotel for about three years. In early 2002 the assistant manager observed them coming down the stairs, arguing. Estrada tried to punch appellant. He grabbed her by the hair and pushed her down into a few bricks.

## II. DISCUSSION

A. *The Instruction on Voluntary Intoxication Did Not Violate Appellant's Right to Due Process.*

 Appellant is adamant that the trial court erred to his prejudice in failing to instruct that the jury could consider his voluntary intoxication in deciding whether he acted with conscious disregard for human life. No error occurred.

### 1. *Legal Framework*

 Initially we review some of the basic homicide concepts. The elements of murder are (1) an unlawful killing of a human being or fetus (2) committed with malice aforethought. (§ 187, subd. (a).) Malice may be express or implied. (§ 188.) Malice is implied "when a killing results from an intentional act, the natural consequences of which are dangerous to human life, and the act is deliberately performed with knowledge of the danger to, and with conscious disregard for, human life." (*People v. Cook* (2006) 39 Cal.4th 566, 596 [47 Cal.Rptr.3d 22].)

"Manslaughter is the unlawful killing of a human being without malice." (§ 192.) "When a killer *intentionally* but unlawfully kills in a sudden quarrel or heat of passion, the killer lacks malice and is guilty only of voluntary manslaughter. . . . [T]his is also true of a killer who, acting with conscious disregard for life and knowing that the conduct endangers the life of another, *unintentionally* but unlawfully kills in a sudden quarrel or heat of passion." (*People v. Lasko* (2000) 23 Cal.4th 101, 104 [96 Cal.Rptr.2d 441, 999 P.2d 666]; see § 192, subd. (a).)

Section 22 often comes into play in a homicide case when an offender accused of murder or manslaughter was voluntarily intoxicated. Initially enacted in 1872, section 22 sets forth the general principle in this state that a criminal act is not rendered less criminal because a person commits the act in

a state of voluntary intoxication.[4] Evidence of voluntary intoxication is not allowed to negate the capacity to form any mental states for the crimes charged. However, such evidence is admissible on the issue of whether the defendant *actually* formed a required specific intent or, with respect to a charge of murder, whether the defendant premeditated, deliberated, or harbored express malice aforethought. (*Id.*, subd. (b).)

Prior to 1981, voluntary intoxication was relevant generally to the defense of diminished capacity. (*People v. Mendoza* (1998) 18 Cal.4th 1114, 1125 [77 Cal.Rptr.2d 428, 959 P.2d 735]; see *People v. Saille* (1991) 54 Cal.3d 1103, 1109–1111 [2 Cal.Rptr.2d 364, 820 P.2d 588].) As well, it was relevant to negate a specific intent but not a general criminal intent. (*People v. Hood* (1969) 1 Cal.3d 444, 455–458 [82 Cal.Rptr. 618, 462 P.2d 370] [assault is general intent crime that is not susceptible to negation through showing of voluntary intoxication].)

The 1981 amendment to section 22 was part of a legislative mission that abolished the defense of diminished capacity while preserving in subdivision (b) the relevancy of evidence of voluntary intoxication to show whether the defendant actually had the required mental state for the crime charged. (Stats. 1981, ch. 404, § 2, pp. 1591–1592; *People v. Mendoza, supra,* 18 Cal.4th at p. 1125.) The 1981 amendment did not distinguish between express and implied malice. (*People v. Whitfield* (1994) 7 Cal.4th 437, 446–447 [27 Cal.Rptr.2d 858, 868 P.2d 272].) Thus the next year the Legislature "promptly revised section 22, subdivision (b), . . . replacing the term 'intent' with the phrase 'a required specific intent' and adding the concluding phrase 'when a specific intent crime is charged.' [Citation.]" (*People v. Whitfield, supra,* at p. 448; see Stats. 1982, ch. 893, § 2, pp. 3317–3318.) Construing the phrase "when a specific intent crime is charged" in the new amendment, the *Whitfield* court held that "section 22 was not intended, in murder prosecutions, to preclude consideration of evidence of voluntary intoxication on the issue whether a defendant harbored malice aforethought, whether the prosecution proceeds on a theory that malice was express or implied." (*People v. Whitfield, supra,* at p. 451.) Thus, under *Whitfield,* evidence of voluntary

---

[4] Section 22 states in relevant part: "(a) No act committed by a person while in a state of voluntary intoxication is less criminal by reason of his or her having been in that condition. Evidence of voluntary intoxication shall not be admitted to negate the capacity to form any mental states for the crimes charged, including, but not limited to, purpose, intent, knowledge, premeditation, deliberation, or malice aforethought, with which the accused committed the act. [¶] (b) Evidence of voluntary intoxication is admissible solely on the issue of whether or not the defendant actually formed a required specific intent, or, when charged with murder, whether the defendant premeditated, deliberated, or harbored express malice aforethought."

intoxication was admissible to negate the subjective component of implied malice. (Former § 22,[5] as amended by Stats. 1982, ch. 893, § 2, pp. 3317–3318.)

Reacting to the *Whitfield* holding, in 1995 the Legislature amended section 22, subdivision (b). (Stats. 1995, ch. 793, § 1, p. 6149; *People v. Mendoza, supra,* 18 Cal.4th at p. 1126.) The Legislative Counsel's Digest to the amending bill stated: "Under existing law, as held by the California Supreme Court in People v. Whitfield, 7 Cal.4th 437 [27 Cal.Rptr.2d 858, 868 P.2d 272], the phrase 'when a specific intent crime is charged' includes murder even where the prosecution relies on a theory of implied malice. [¶] This bill would provide, instead, that evidence of voluntary intoxication is admissible solely on the issue of whether or not the defendant actually formed a required specific intent, or, when charged with murder, whether the defendant premeditated, deliberated, or harbored express malice aforethought." (Legis. Counsel's Dig., Sen. Bill No. 121 (1995–1996 Reg. Sess.), Summary Dig., p. 334.) With the 1995 amendment, voluntary intoxication is no longer admissible to negate implied malice. (*People v. Reyes* (1997) 52 Cal.App.4th 975, 984, fn. 6 [61 Cal.Rptr.2d 39].)

In this case the trial court instructed the jury in the language of Judicial Council of California Criminal Jury Instructions (2006–2007) CALCRIM No. 625 as follows: "You may consider evidence, if any, of the defendant's voluntary intoxication only in a limited way. You may consider that evidence only in deciding whether the defendant acted with an intent to kill. [¶] . . . [¶] You may not consider evidence of voluntary intoxication for any other purpose." This instruction is true to section 22, as amended.

### 2. *Analysis*

Appellant argues that application of section 22 to his case, through the above instruction, violates his due process rights because the effect is to exclude relevant evidence on the issue of whether he harbored a "conscious disregard" for life.[6]

---

[5] Former section 22 provided at subdivision (b) that: "Evidence of voluntary intoxication is admissible solely on the issue of whether or not the defendant actually formed a required specific intent, premeditated, deliberated, or harbored malice aforethought, when a specific intent crime is charged."

[6] Appellant was convicted of voluntary manslaughter, not second degree murder as charged, so there is no issue concerning implied malice. However, as the People point out, the mental requirement for unintentional voluntary manslaughter as explicated in *People v. Lasko, supra,* 23 Cal.4th 101 and the definition of implied malice both share the concept of conscious disregard for life. Thus, appellant's complaint is that the court should have instructed the jury that it could consider voluntary intoxication when determining whether he acted with conscious disregard.

In *People v. Martin* (2000) 78 Cal.App.4th 1107, 1115–1117 [93 Cal.Rptr.2d 433], the reviewing court surveyed the history of section 22 as well as the cases addressing the constitutional validity of the enactments abolishing the defense of diminished capacity. It concluded: "The Legislature's most recent amendment to section 22 is closely analogous to its abrogation of the defense of diminished capacity. . . . The 1995 amendment to section 22 results from a legislative determination that, for reasons of public policy, evidence of voluntary intoxication to negate culpability shall be strictly limited. We find nothing in the enactment that deprives a defendant of the ability to present a defense or relieves the People of their burden to prove every element of the crime charged beyond a reasonable doubt . . . ." (*People v. Martin, supra,* at p. 1117.)

Appellant urges that *Martin* was "poorly reasoned and wrongly decided" in light of the plurality opinion in *Montana v. Egelhoff* (1996) 518 U.S. 37 [135 L.Ed.2d 361, 116 S.Ct. 2013] (*Egelhoff*). *Egelhoff* concerned the constitutionality of a Montana statute providing that voluntary intoxication " 'may not be taken into consideration in determining the existence of a mental state which is an element of [a criminal] offense.' " (*Id.* at pp. 39–40.) Justice Scalia, with the concurrence of three justices, found no due process violation because the right to have a jury consider evidence of voluntary intoxication is not a " 'fundamental principle of justice.' " (*Id.* at pp. 43–48 (plur. opn.).) Another four justices concluded the statute did violate the defendant's due process rights because it disallowed evidence relevant to determining the existence of a mental state that is an essential element of the crime. (*Id.* at p. 61 (dis. opn. of O'Connor, J.).) Concurring in the judgment, Justice Ginsburg drew a distinction between rules designed to keep out relevant, exculpatory evidence that might negate an essential element, and rules that redefine the mental state element of the offense. The former would be violative of due process while the latter would not. She viewed the Montana statute as amounting to a redefinition of the offense that rendered evidence of voluntary intoxication irrelevant to proof of the requisite mental state. (*Id.* at pp. 57–59 (conc. opn. of Ginsburg, J.).)

Respondent acknowledges that Justice Ginsburg's concurring opinion "may be viewed as the holding of the Court." " 'When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, "the holding of the Court may be viewed as that position taken by those Members who concurred in the judgment on the narrowest grounds . . . ." ' " (*Del Monte v. Wilson* (1992) 1 Cal.4th 1009, 1023 [4 Cal.Rptr.2d 826, 824 P.2d 632], quoting *Marks v. United States* (1977) 430 U.S. 188, 193 [51 L.Ed.2d 260, 97 S.Ct. 990].) Justice Scalia's plurality opinion expressed apparent complete agreement with Justice Ginsburg's rationale. (*Egelhoff, supra,* 518 U.S. at p. 50, fn. 4.) Assuming that Justice

Ginsburg's concurrence controls, we nonetheless conclude that the application of section 22 does not violate appellant's due process rights.

 Appellant characterizes the amended section 22 as belonging to the prohibited category of evidentiary rules designed to exclude relevant exculpatory evidence, but it is not. First, we note that Justice Ginsburg also stated: "Defining *mens rea* to eliminate the exculpatory value of voluntary intoxication does not offend a 'fundamental principle of justice,' given the lengthy common-law tradition, and the adherence of a significant minority of the States to that position today. [Citations.]" (*Egelhoff, supra*, 518 U.S. at pp. 58–59 (conc. opn. of Ginsburg, J.).) Under this rationale, the 1995 amendment permissibly could preclude consideration of voluntary intoxication to negate implied malice and the notion of conscious disregard. Like the Montana statute, the California Legislature could also exclude evidence of voluntary intoxication in determination of the requisite mental state.

 Second, as we have shown, section 22 is part of California's history of limiting the exculpatory effect of voluntary intoxication and other capacity evidence. (See *People v. Saille, supra*, 54 Cal.3d at p. 1116; *People v. Hood, supra*, 1 Cal.3d at pp. 455–458; *People v. Lynn* (1984) 159 Cal.App.3d 715, 731–733 [206 Cal.Rptr. 181].) Section 22 does not appear in the Evidence Code, it appears in the Penal Code under the "Preliminary Provisions," along with statutes defining and setting forth the kinds and degrees of crimes and their punishment (§§ 16–19.8), the requirement of act and intent or negligence (§ 20), the elements of attempt (§ 21a), etc. Since 1872, the first sentence of section 22 (now at subdivision (a)) has declared the policy of this state that an act is not less criminal because the actor committed it while voluntarily intoxicated. This means that, with respect to the same conduct, an intoxicated person shoulders the same criminal responsibility as a sober person. The next sentence declares the substantive law that voluntary intoxication is not available to a defendant as a basis for a diminished capacity defense. Subdivision (b) of section 22 establishes, and limits, the exculpatory effect of voluntary intoxication on the required mental state for a particular crime. It permits evidence of voluntary intoxication for limited exculpatory purposes on the issue of specific intent or, in murder cases, deliberation, premeditation and express malice aforethought. The absence of implied malice from the exceptions listed in subdivision (b) is itself a policy statement that murder under an implied malice theory comes within the general rule of subdivision (a) such that voluntary intoxication can serve no defensive purpose. In other words, section 22, subdivision (b) is not "merely an evidentiary prescription"; rather, it "embodies a legislative judgment regarding the circumstances under which individuals may be held criminally responsible for their actions." (*Egelhoff, supra*, 518 U.S. at p. 57 (conc. opn. of Ginsburg, J.).) In short, voluntary intoxication is irrelevant to proof of the mental state of implied malice or conscious disregard. Therefore, it does not

lessen the prosecution's burden of proof or prevent a defendant from presenting all relevant defensive evidence.

Appellant further argues that in enacting the 1995 amendments, the Legislature was not concerned with questions of responsibility, but with a problem specific to vehicular homicide, namely that under *Whitfield*, intoxication served both to aggravate drunk driving to second degree murder and to mitigate it to manslaughter. (Citing Assem. Com. on Public Safety, Analysis of Sen. Bill No. 121 (1995–1996 Reg. Sess.) July 11, 1995, pp. 3–4.) A more thorough reading of the above report indicates that although the Legislature was concerned about the specific facts of *Whitfield*, it was also cognizant of the larger issue, namely that the proposed amendment "[e]xpressly limits the admissibility of voluntary intoxication to the issue of express malice, making it inadmissible when a theory of implied malice is used. Stops voluntary intoxication from being used as a quasi-diminished capacity defense by distinguishing between express and implied malice on this issue." (*Id.*, p. 5.)

Appellant also argues that, unlike the Montana statute at issue in *Egelhoff*, in California voluntary intoxication is not, " 'logically irrelevant' " because a finding of implied malice depends on a determination that the defendant subjectively appreciated the risk involved in his or her actions. (*Egelhoff*, *supra*, 518 U.S. at p. 58 (conc. opn. of Ginsburg, J.).) But the defendant in *Egelhoff* was found guilty as charged with two counts of deliberate homicide, defined by Montana law as " 'purposely' " or " 'knowingly' " causing the death of another. (*Id.* at pp. 40–41 (plur. opn.).) As Justice Ginsburg explained, with the removal of voluntary intoxication from the mens rea inquiry by virtue of the statute in question, the prosecution no longer had to prove that the defendant " 'purposely or knowingly' " caused death "in a purely subjective sense." (*Id.* at p. 58 (conc. opn. of Ginsburg, J. [referring to arguments of Montana and amici curiae]).) The prosecution thus had only to prove that the defendant had actual knowledge or purpose, or that he or she killed under circumstances that would otherwise establish such knowledge or purpose but for his or her voluntary intoxication. (*Ibid.*) Section 22 imposes no different requirement.

Finally, we note that our Supreme Court has rejected, albeit cursorily, a due process challenge to section 22: "[W]e reject defendant's argument that the withholding of voluntary intoxication evidence to negate the mental state of arson violates his due process rights by denying him the opportunity to prove he did not possess the required mental state." (*People v. Atkins* (2001) 25 Cal.4th 76, 93 [104 Cal.Rptr.2d 738, 18 P.3d 660], citing *Egelhoff*, *supra*, 518 U.S. at pp. 39–40, 56.)

## B. *Section 22 Does Not Violate Equal Protection Principles.*

■ Appellant also assails section 22 because it applies different rules to defendants accused of killing with implied malice than it applies to those accused of killing with express malice, therefore violating equal protection principles. A defendant claiming that state legislation violates equal protection principles must first demonstrate that the laws treat persons similarly situated in an unequal manner. (*People v. Wilkinson* (2004) 33 Cal.4th 821, 836 [16 Cal.Rptr.3d 420, 94 P.3d 551].) Different levels of scrutiny apply to different types of classifications. At a minimum, statutory classifications must be rationally related to a legitimate governmental purpose. (*Ibid.*) Criminal classifications determining gradations of culpability do not implicate strict scrutiny. (*Id.* at p. 838.) A defendant does not have a fundamental interest in the specific term of imprisonment or the definition or designation of a particular crime. (*Ibid.*) "Application of the strict scrutiny standard in this context would be incompatible with the broad discretion the Legislature traditionally has been understood to exercise in defining crimes and specifying punishment." (*Ibid.*)

The Legislature had a rational basis for not allowing voluntary intoxication to serve as a defense in an implied malice case. As appellant points out, the Legislature deemed it confusing, in a vehicular homicide case, to allow evidence of voluntary intoxication to aggravate as well as to mitigate the offense. More fundamentally, by withholding voluntary intoxication as a defense to implied malice murder, the Legislature bolstered the deterrent effect of section 22 by underscoring the long-standing principle in California law that voluntary intoxication is no excuse for crime.

Appellant argues that section 22 is irrational because first degree murderers, the most culpable, "may reduce their convictions to involuntary manslaughter by showing they were too intoxicated to possess the required mental state, while less culpable second-degree murderers and persons who have otherwise committed voluntary manslaughter are precluded from having the jury consider the same evidence on the same element." This is a weak argument. There is no such creature as a first degree murderer prior to conviction. An offender's degree of culpability is determined by the conviction, based on relevant evidence and the governing law, not on the charging papers. As this case shows, based on the evidence, the charge of first degree murder was dismissed. And based on the evidence, appellant was convicted of voluntary manslaughter, not second degree murder. Thus, a voluntarily intoxicated offender charged with first degree murder can be convicted of second degree murder on a theory of implied malice, for which evidence of voluntary intoxication could not be considered. Such person, as was appellant, can also be convicted of voluntary manslaughter. These results, based on our present scheme, are not irrational; nor is the scheme.

C. *The Reasonable Doubt Instructions Will Stand.*[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## III. DISPOSITION

The judgment of conviction is affirmed.

Ruvolo, P. J., and Sepulveda, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 19, 2007, S154425.

---

[*] See footnote, *ante*, page 1292.