Filed 7/7/14  P. v. Trujillo CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G044131 |
| v. | (Super. Ct. No. 08WF2093) |
| ALEX DAVID TRUJILLO, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, James Patrick Marion, Judge.  Affirmed.

Susan D. Shors, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, William M. Wood and Meagan J. Beale, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

Defendant Alex David Trujillo struck two bicyclists while driving his pickup truck; one of the bicyclists died. After the collision, a test of defendant's blood showed he was driving under the influence of alcohol and prescription medication. The prosecution offered evidence of defendant's voluntary intoxication, as well as his previous conviction for driving under the influence, to establish implied malice supporting defendant's conviction for second degree murder. Defendant raises three issues on appeal; finding no merit in any of them, we affirm defendant's conviction.

First, defendant argues the trial court erred by failing to instruct the jury regarding involuntary intoxication. There was no evidence supporting a defense of unconsciousness or involuntary intoxication, however. For the same reason, defendant's trial counsel was not ineffective for failing to request such an instruction.

Second, defendant argues the jury was erroneously permitted to consider evidence of his voluntary intoxication to establish implied malice. We conclude Penal Code former section 22 permitted the prosecution to offer evidence of a defendant's voluntary intoxication to establish implied malice, while precluding the defendant from offering the same evidence to negate implied malice. Former section 22 did not violate a defendant's due process or equal protection rights.

Finally, defendant argues the trial court erred by failing to instruct the jury on gross vehicular manslaughter while intoxicated, which is a lesser related charge of murder. The prosecution did not agree to an instruction on the lesser charge, and the trial court did not err in failing to give it.

STATEMENT OF FACTS AND PROCEDURAL HISTORY

About 4:55 p.m. on October 12, 2008, defendant was driving his pickup truck eastbound on Lampson Avenue in Seal Beach. Witnesses observed defendant driving normally within the posted speed limit. However, defendant failed to negotiate a

gradual left turn in the road, and his truck jumped the curb onto the sidewalk, hit two bicyclists, and struck a tree. Defendant did not apply the brakes or swerve before the collision. Catherine Busse, one of the bicyclists, died as the result of multiple blunt traumatic injuries.

Defendant was treated at the University of California, Irvine Medical Center. When questioned by paramedics and hospital personnel, he denied taking any medications or drinking alcohol that day. Defendant's blood was drawn at 5:35 p.m., showing a blood alcohol level of 0.10 percent. Defendant's blood was drawn again at 6:20 p.m.; the blood alcohol level of that sample was 0.09 percent. Defendant's second blood sample indicated the presence of therapeutic levels of oxycodone, hydrocodone, and alprazolam in his bloodstream.[1]

An expert in forensic toxicology opined defendant's blood alcohol content at the time of the collision would have been between 0.11 and 0.12 percent. The expert testified the other drugs in defendant's system were central nervous system depressants that would have enhanced the effects of alcohol. Using retrograde extrapolation, the expert estimated that if defendant had not consumed any alcoholic beverages on October 12, his blood alcohol level of about 0.11 percent at 4:55 p.m. would have meant he had a blood alcohol level between 0.30 and 0.40 percent at 12:00 a.m. on October 12. Such a blood alcohol level would potentially be a lethal dose, at which defendant would have been expected to be grossly impaired. Defendant would have had to consume between 17 and 23 alcoholic beverages to reach that level, although his weight, tolerance level, timing of consumption, food intake, and fatigue could affect the impacts of alcohol.

Multiple pill bottles for OxyContin and hydrocodone were found at defendant's home. Prescription receipts for OxyContin and hydrocodone were found in the glove compartment of defendant's truck. All the bottles and receipts were labeled

---

[1] Oxycodone, hydrocodone, and alprazolam are the generic forms of OxyContin, Vicodin, and Xanax, respectively.

with warnings that the medication could make the user drowsy, caution should be used when operating a vehicle after taking the medicine, and alcohol could intensify the effects of the medication.

Defendant had been convicted of driving under the influence of alcohol in 2002. When defendant was pulled over in 2002, he felt fine, believed he could operate a motor vehicle, and thought he was safe to drive and in control; defendant testified he would not have gotten in his car that evening if he did not feel safe to drive. After his conviction, defendant participated in a nine-month first offender driving under the influence program. At the conclusion of that program, defendant signed a statement, acknowledging: "I understand that alcohol and/or drugs impair my ability to drive, and I understand the dangerous consequences of drinking or using drugs and driving. [¶] If you choose to ignore this warning and drive while under the influence of alcohol or drugs or both and someone is killed, you may be charged with vehicular manslaughter or murder. [¶] The element of malice in a charge of murder may be implied because you have the knowledge of the danger of the conduct . . . , and the risk that such conduct poses to the public."

Both defendant and his wife testified that defendant drank alcohol at a wedding the night before the collision, but stopped drinking between midnight and 1:00 a.m. Defendant was drunk, but he and his wife spent the night at the hotel where the wedding reception was held. Defendant took OxyContin, Soma, and Vicodin, as prescribed, in the evening of October 11, and took OxyContin, as prescribed, in the morning of October 12. Defendant's wife testified defendant did not drink any alcohol during the morning of October 12, and did not appear impaired in any way. Defendant slept in the car while his wife drove home that morning. Defendant did some chores around the house and left at 4:00 or 4:30 p.m. to run errands. Both defendant and his wife testified that defendant did not drink any alcohol or take any prescription medication after they got home on October 12.

4

Defendant's wife did not observe any signs of intoxication before defendant left to go shopping. Defendant did not feel impaired. He would not have driven if he had felt drowsy. Defendant testified that on October 12, he did not feel he was a risk to others, and did not drive with a disregard for the safety of others.

Defendant's physician testified he had treated defendant for back pain for many years, and had prescribed OxyContin, Vicodin, and Flexeril, a muscle relaxant. The physician had warned defendant about the effects of combining those medications with alcohol, particularly when driving, and cautioned defendant not to drive after taking Vicodin.

Defendant was charged with a single count of second degree murder (Pen. Code, § 187, subd. (a)), and a jury convicted him. The trial court sentenced defendant to 15 years to life in prison. Defendant filed a timely notice of appeal.

DISCUSSION

I.

*INSTRUCTION ON INVOLUNTARY INTOXICATION*

Defendant argues he was prejudiced by the lack of a jury instruction on involuntary intoxication. Defendant contends the trial court had a sua sponte duty to so instruct the jury; alternatively, he contends his trial counsel was ineffective for failing to request such an instruction. Defendant does not identify the instruction or instructions he claims should have been given to the jury. We presume for purposes of this opinion that the potentially relevant instructions would have been CALCRIM Nos. 3425 and 3427.[2]

---

[2] CALCRIM No. 3425 reads as follows: "The defendant is not guilty of _____ *<insert crime[s]>* if (he/she) acted while unconscious. Someone is unconscious when he or she is not conscious of his or her actions. [Someone may be unconscious even though able to move.] [¶] Unconsciousness may be caused by (a blackout[,]/ [or] an epileptic seizure[,]/ [or] involuntary intoxication[,]/ [or] _____ *<insert a similar condition>*). [¶] [The defense of unconsciousness may not be based on voluntary intoxication.] [¶] The People must prove beyond a reasonable doubt that the defendant was conscious when

5

A trial court has a sua sponte duty to instruct on defenses "'only if it appears that the defendant is relying on such a defense, or if there is substantial evidence supportive of such a defense *and* the defense is not inconsistent with the defendant's theory of the case.'" (*People v. Breverman* (1998) 19 Cal.4th 142, 157.) No evidence supported the giving of an instruction on involuntary intoxication in this case. No evidence was presented that defendant was unconscious at the time of the collision; to the contrary, he provided significant testimony of exactly what had happened before, during, and after the collision. "[U]nconsciousness need not rise to the level of coma or inability to walk or perform manual movements; it can exist 'where the subject physically acts but is not, at the time, conscious of acting.'" (*People v. Halvorsen* (2007) 42 Cal.4th 379, 417.) Nothing in the record supports a contention that defendant was not conscious of his actions at the time of the collision.

Further, no evidence was offered showing defendant unknowingly ingested an intoxicating substance or his intoxication was caused by the force, duress, or trickery of someone else. To the contrary, all the evidence at trial was that defendant knowingly ingested alcohol and prescription medications, but did not realize he was still suffering from the residual effects of the combination of substances at the time the collision occurred.

This case is similar to *People v. Mahle* (1969) 273 Cal.App.2d 309, 316, in which the appellate court held the trial court did not have a sua sponte duty to instruct the

(he/she) acted. If there is proof beyond a reasonable doubt that the defendant acted as if (he/she) were conscious, you should conclude that (he/she) was conscious, unless based on all the evidence, you have a reasonable doubt that (he/she) was conscious, in which case you must find (him/her) not guilty."

CALCRIM No. 3427 reads: "Consider any evidence that the defendant was involuntarily intoxicated in deciding whether the defendant had the required (intent/ [or] mental state) when (he/she) acted. [¶] A person is *involuntarily intoxicated* if he or she unknowingly ingested some intoxicating liquor, drug, or other substance, or if his or her intoxication is caused by the (force/[, [or] duress/, [or] fraud/, [or] trickery of someone else), for whatever purpose[, without any fault on the part of the intoxicated person]."

6

jury on involuntary intoxication where there was uncontradicted evidence the defendant had been taking a prescription medication while consuming alcohol for several months before committing murder. "From this evidence, the jury could properly conclude that defendant would be well aware of the combination of alcohol and drugs. Furthermore, defendant here does not contend that the drugs were taken involuntarily but rather that the combined effect of the drugs and alcohol was unforeseen. In view of defendant's experience with the combined effects, the trial court properly determined that he was either aware thereof or willingly assumed the risk." (*Ibid.*)

*People v. Chaffey* (1994) 25 Cal.App.4th 852, relied on by defendant, is not to the contrary. The court in that case explained, "[a] person whose intoxication is not voluntary is relieved from liability because of excusable mistake. 'What prevents the intoxication from being voluntary in these cases of fraud is not the trickery of the other person but the innocent mistake of fact by the one made drunk, and an actual ignorance of the intoxicating character of the liquor or drug has the same effect whether the mistake is induced by the artifice of another or not. [Fn. omitted.]' [Citation.]" (*Id.* at p. 856.) In *Chaffey*, the defendant was convicted of driving under the influence of an intoxicating drug after she took an overdose of a prescription medication, intending to commit suicide; the medication rendered her unaware of her actions and she drove her car while in that condition. (*Id.* at p. 854.) There was evidence that the label warned the medication would cause drowsiness. (*Ibid.*) The trial court found the intoxication was voluntary because it was predictable the defendant would become sleepy and "'something would happen.'" (*Ibid.*) The *Chaffey* court affirmed the conviction because the evidence supported the trial court's conclusion, although it noted that the evidence could have supported a conclusion that the defendant's intoxication was involuntary because the defendant did not know, and a reasonable person in her condition would not have known, that an overdose of the medication would cause intoxication. (*Id.* at p. 857.) Because defendant was aware of the intoxicating effects of alcohol, and the potential that

7

taking his prescribed medication could intensify the effects of alcohol, *Chaffey* is distinguishable, and the defense of involuntary intoxication was unavailable to defendant.

Defendant alternatively argues that his trial counsel's failure to ask the court to instruct on involuntary intoxication amounted to ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, defendant must demonstrate both that counsel's performance was deficient, and that counsel's deficient representation prejudiced the defendant. (*Strickland v. Washington* (1984) 466 U.S. 668, 687.)

In light of the state of the evidence, defendant has not demonstrated any deficiency in his trial counsel's failure to request instructions on involuntary intoxication. As discussed *ante*, there was no evidence to which the jury could have applied the instructions defendant urges his counsel should have requested. Because the evidence did not support an instruction on involuntary intoxication, defendant cannot demonstrate that his trial counsel provided ineffective assistance of counsel by failing to request one. (*People v. Slaughter* (2002) 27 Cal.4th 1187, 1221 [argument that counsel was ineffective for not requesting a particular jury instruction fails because the instruction was unsupported by the evidence].)

## II.

### *EVIDENCE OF VOLUNTARY INTOXICATION*

Defendant argues the jury instructions erroneously permitted the jurors to consider evidence of his voluntary intoxication on the issue of implied malice, in violation of Penal Code former section 22, subdivision (b),[3] and his federal constitutional rights.

---

[3] Effective January 1, 2013, Penal Code former section 22 was renumbered as Penal Code section 29.4. (Stats. 2012, ch. 162, § 119.)

Defendant forfeited this argument because he did not request an instruction limiting the jury's use of evidence of his voluntary intoxication to establish implied malice. (*People v. Jenkins* (2000) 22 Cal.4th 900, 1020 [the defendant's failure to request a jury instruction clarifying a legal principle waived any claim the trial court erred by not giving the instruction].) "An instruction on the significance of voluntary intoxication is a 'pinpoint' instruction that the trial court is not required to give unless requested by the defendant." (*People v. Rundle* (2008) 43 Cal.4th 76, 145, disapproved on another ground in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.)

Even if we were to consider defendant's argument on its merits, we would conclude there was no error. Murder is "the unlawful killing of a human being, or a fetus, with malice aforethought." (Pen. Code, § 187, subd. (a).) Malice may be implied "when a killing results from an intentional act, the natural consequences of which are dangerous to human life, and the act is deliberately performed with knowledge of the danger to, and with conscious disregard for, human life." (*People v. Cook* (2006) 39 Cal.4th 566, 596.) "It is well established that driving while intoxicated is an act which may support a conviction for second degree murder under an implied malice theory." (*People v. Ferguson* (2011) 194 Cal.App.4th 1070, 1080; see *People v. Watson* (1981) 30 Cal.3d 290, 300-301.)

In *People v. Whitfield* (1994) 7 Cal.4th 437, 451, the Supreme Court held Penal Code former section 22 did not preclude a defendant in a murder case from offering evidence of his or her voluntary intoxication on the issue of express or implied malice. In response to the *People v. Whitfield* holding, the California Legislature amended Penal Code former section 22, subdivision (b) to prohibit a defendant from using evidence of voluntary intoxication to negate implied malice. (See *People v. Mendoza* (1998) 18 Cal.4th 1114, 1125-1126; *People v. Timms* (2007) 151 Cal.App.4th 1292, 1298.)

At the time of defendant's trial, Penal Code former section 22 provided: "(a) No act committed by a person while in a state of voluntary intoxication is less criminal by reason of his or her having been in that condition. Evidence of voluntary intoxication shall not be admitted to negate the capacity to form any mental states for the crimes charged, including, but not limited to, purpose, intent, knowledge, premeditation, deliberation, or malice aforethought, with which the accused committed the act. [¶] (b) Evidence of voluntary intoxication is admissible solely on the issue of whether or not the defendant actually formed a required specific intent, or, when charged with murder, whether the defendant premeditated, deliberated, or harbored express malice aforethought."

Thus, Penal Code former section 22, subdivision (a) prohibited a defendant from using evidence of his or her voluntary intoxication to negate the capacity to form any mental states. Former section 22, subdivision (b) created a limited exception to former section 22, subdivision (a), by allowing a defendant in a murder case to use evidence of his or her voluntary intoxication to show he or she did not actually harbor express malice. By its clear terms, the limited exception created by former section 22, subdivision (b) did not include implied malice.

Nothing in Penal Code former section 22, subdivision (a), however, prohibited the *prosecution* from using evidence of a defendant's voluntary intoxication to *establish* an element of an offense. Consequently, the limited exception of former section 22, subdivision (b) did not apply to the prosecution. We reject defendant's argument that former section 22's prohibition on a defendant's ability to offer evidence of voluntary intoxication to negate implied malice also precluded the prosecution from using such evidence to establish implied malice.

Defendant also argues Penal Code former section 22 violated his due process and equal protection rights because it prohibited him from using evidence of his voluntary intoxication to negate implied malice, while allowing the prosecution to use

10

that evidence to prove implied malice.  Defendant bases his argument on the United States Supreme Court's decision in *Montana v. Egelhoff* (1996) 518 U.S. 37 (*Egelhoff*), which *rejected* a due process challenge to a Montana statute.  The defendant in *Egelhoff* was charged with deliberate homicide, a crime Montana law defined as "'purposely'" or "'knowingly'" causing the death of another human being.  (*Id.* at p. 40.)  The defendant argued the Montana statute barring evidence of voluntary intoxication to show the absence of the requisite mental state violated his due process right to present all relevant evidence rebutting the prosecution's evidence on the offense charged.  (*Id.* at p. 41.)

A plurality opinion authored by Justice Scalia explained criminal defendants have no absolute right to introduce relevant evidence, and the Montana statute would violate due process only if the defendant showed his "right to have a jury consider evidence of his voluntary intoxication in determining whether he possesses the requisite mental state is a 'fundamental principle of justice.'" (*Egelhoff*, *supra*, 518 U.S. at pp. 42-43.)  Justice Scalia's plurality opinion concluded a defendant's right to present evidence of voluntary intoxication was not a fundamental principle of justice because both common law tradition and the laws of a considerable number of states either prohibited or significantly limited a criminal defendant's use of such evidence.  (*Id.* at pp. 48-49.)

Justice Ginsburg wrote a separate concurring opinion joining in the conclusion the Montana statute did not violate due process.  Justice Ginsburg distinguished between statutes designed to exclude relevant, exculpatory evidence that might negate an essential element of the charged offense—which violate due process— and statutes that redefine the elements of the charged offense and therefore render certain evidence irrelevant—which do not. (*Egelhoff*, *supra*, 518 U.S. at p. 57 (conc. opn. of Ginsburg, J.).)  "'[A] state legislature certainly has the authority to identify the elements of the offenses it wishes to punish,' [citation], and to exclude evidence irrelevant to the crime it has defined." (*Ibid.*)  Justice Ginsburg concluded the Montana statute redefined

11

the mental state element because it "embodies a legislative judgment regarding the circumstances under which individuals may be held criminally responsible for their actions." (*Ibid.*)[4]

Defendant argues Penal Code former section 22 did not fit within Justice Ginsburg's discussion of a redefinition of the mental state element for the crime of murder. That argument has been rejected by *People v. Timms*, *supra*, 151 Cal.App.4th 1292, with which we agree. "[Former] section 22 is part of California's history of limiting the exculpatory effect of voluntary intoxication and other capacity evidence. [Citations.] . . . Since 1872, the first sentence of section 22 (now at subdivision (a)) has declared the policy of this state that an act is not less criminal because the actor committed it while voluntarily intoxicated. . . . The next sentence declares the substantive law that voluntary intoxication is not available to a defendant as a basis for a diminished capacity defense. Subdivision (b) of section 22 establishes, and limits, the exculpatory effect of voluntary intoxication on the required mental state for a particular crime. . . . The absence of implied malice from the exceptions listed in subdivision (b) is itself a policy statement that murder under an implied malice theory comes within the general rule of subdivision (a) such that voluntary intoxication can serve no defensive purpose. In other words, section 22, subdivision (b) is not 'merely an evidentiary prescription'; rather, it 'embodies a legislative judgment regarding the circumstances under which individuals may be held criminally responsible for their actions.' [Citation.]" (*Id.* at p. 1300.)

---

[4] """"When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgment on the narrowest grounds . . . .'"" [Citation.] Justice Scalia's plurality opinion expressed apparent complete agreement with Justice Ginsburg's rationale. [Citation.]" (*People v. Timms*, *supra*, 151 Cal.App.4th at p. 1299; *id.* at pp. 1299-1300 [concluding Justice Ginsburg's concurring opinion represents the holding of the court].)

Penal Code former section 22, subdivision (b)'s prohibition against using evidence of voluntary intoxication to negate implied malice did not violate a defendant's due process rights. (See *People v. Timms*, *supra*, 151 Cal.App.4th at pp. 1300-1301; *People v. Martin* (2000) 78 Cal.App.4th 1107, 1117.)

We conclude defendant's equal protection argument lacks merit. "A defendant claiming that state legislation violates equal protection principles must first demonstrate that the laws treat persons similarly situated in an unequal manner." (*People v. Timms*, *supra*, 151 Cal.App.4th at p. 1302.) Defendant argues that Penal Code former section 22 treated the prosecution and the defense differently. However, the prosecution and defense are not similarly situated, and this differential treatment does not violate equal protection.

### III.

*FAILURE TO GIVE INSTRUCTION ON VEHICULAR MANSLAUGHTER*

Defendant argues that his federal due process rights were denied when the trial court failed to instruct the jury on the lesser related charge of gross vehicular manslaughter while intoxicated as an alternative to the charged crime of murder.

In *People v. Birks* (1998) 19 Cal.4th 108, 136 (*Birks*), the California Supreme Court overruled *People v. Geiger* (1984) 35 Cal.3d 510, which held a "defendant has a state constitutional right to instructions on lesser offenses that are *not* necessarily included in the stated charge" and "instructions on lesser merely 'related' offenses can be given *only upon the defendant's request*" (*Birks*, *supra*, at p. 112). The Supreme Court in *Birks* held, inter alia, "the California Constitution should not be construed to grant criminal defendants an affirmative right to insist on jury consideration of nonincluded offenses *without the prosecutor's consent*." (*Id.* at p. 136, italics added; see *People v. Rundle*, *supra*, 43 Cal.4th at p. 147 ["In *Birks*, however, we overruled the holding of *Geiger* that a defendant's unilateral request for a related-offense instruction

13

must be honored over the prosecution's objection"]; *People v. Nelson* (2011) 51 Cal.4th 198, 215 [same].)  In *People v. Nelson*, *supra*, 51 Cal.4th at page 215, the Supreme Court stated, "[w]e have previously rejected an argument that the *Birks* rule violates the federal Constitution."

In *People v. Sanchez* (2001) 24 Cal.4th 983, 985, the California Supreme Court held that the offense of gross vehicular manslaughter while intoxicated is not a lesser included offense of murder.  The Supreme Court explained:  "Although it long has been held that manslaughter is a lesser included offense of murder, this tradition has not explicitly included offenses requiring proof of specific elements unique to vehicular manslaughter.  Unlike manslaughter generally, vehicular manslaughter while intoxicated requires proof of elements that are not necessary to a murder conviction.  The use of a vehicle while intoxicated is not merely a 'circumstance,' but an element of proof when the charge is gross vehicular manslaughter while intoxicated.  Gross vehicular manslaughter while intoxicated is not merely a degree of murder, nor is it a crime with a lengthy pedigree as a lesser included offense within the crime of murder."  (*Id.* at p. 991.)  The court further stated, "[a]lthough we recognize that historically manslaughter in general has been considered a necessarily included offense within murder, that long and settled tradition has not extended to the more recently enacted forms of vehicular manslaughter that require proof of additional elements."  (*Id.* at p. 992.)

In *Hopkins v. Reeves* (1998) 524 U.S. 88, 96-97, the United States Supreme Court held that criminal defendants do not have a federal constitutional right to jury instructions on lesser related, as opposed to lesser included, criminal offenses.

As the California Supreme Court has held that gross vehicular manslaughter while intoxicated is not a lesser included offense of second degree murder, defendant was not entitled to an instruction on that lesser related charge.

14

DISPOSITION

The judgment is affirmed.


FYBEL, ACTING P. J.

WE CONCUR:


IKOLA, J.


THOMPSON, J.