Filed 12/16/20  P. v. Gallegos CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JUAN DE DIOS GALLEGOS III,<br><br>    Defendant and Appellant. | 2d Crim. No. B303623<br>(Super. Ct. No. 2019017979)<br>(Ventura County) |

Juan de Dios Gallegos appeals his conviction, by jury, of second degree murder in the death of Michael James Holley on May 23, 2019.  (Pen. Code, §§ 187, subd. (a), 189.)[1]  The jury further found appellant used a deadly weapon, a pickup truck, in committing the murder.  (§ 12022, subd. (b)(1).)  The trial court sentenced appellant to a total term in state prison of 36 years to life.  He contends the trial court violated his right to due process

_____

[1] All statutory references are to the Penal Code unless otherwise stated.

and his right to present a defense when it instructed the jury, in terms of CALCRIM No. 625, that voluntary intoxication is not relevant to the question of whether he acted with conscious disregard for human life. Appellant further contends his trial counsel rendered ineffective assistance because counsel failed to request that the instruction be modified to allow the jury to consider his voluntary intoxication. We affirm.

*Facts*

Appellant was drinking with his friend Tereso Jimenez on the night of May 23, 2019. They ran out of alcohol so, at about 11 p.m., appellant drove his Dodge Ram Dakota pickup truck to an Oxnard strip mall to buy more. While there, the two men tried unsuccessfully to pick up a couple of women who were hanging out in the parking lot. Appellant went into the liquor store and purchased some alcohol.

Around the same time, Michael Holley, a local transient, and Anthony Miinster, a friend of Holley's, walked through the parking lot. The two men said hello to the women and continued walking through the lot toward Azalea Street. They crossed Azalea Street and entered an alley. The alley runs parallel to Ventura Road and Mariposa Street, between Azalea Street to the south and Fuchsia Street to the north. There, they met an acquaintance, Brandy Pinkard, who asked them for a cigarette. The trio stood talking in the alley while Holley retrieved a cigarette for Pinkard.

Meanwhile, appellant returned to his pickup truck and drove out of the parking lot, exiting on to Ventura Road, heading north. After crossing Azalea Street, appellant drove another block before making a U-turn on Bevra Avenue. He then drove back down Ventura Road and turned left onto Azalea Street.

Appellant drove past the entrance to the alley, then stopped and made a three-point turn. He turned off his headlights and entered the alley, accelerating as he drove along its left side.

Pinkard and Miinster were standing on the left side of the alley. They heard appellant's truck accelerate and jumped out of the way. Holley, who was standing to the right, did not seem to notice appellant's truck speeding toward him. Although there was plenty of room on the left, appellant suddenly swerved to the right. The truck hit Holley, throwing him into the air. Holley landed on his back along the left side of the alley. Even though there was room to go around him, appellant redirected his truck to the left and drove over Holley's body. Then he continued driving along the alley without stopping. Holley died as a result of his injuries.

Brandy Pinkard testified that appellant's truck was loud and sounded like it was speeding up as it approached them. She saw the truck veer to the left and then to the right, as if it was targeting Holley.

Dalia Mendoza was sitting in the carport of her apartment building, texting on her phone, when the collision occurred. She testified that she watched as the driver "pulls himself forward towards the steering wheel and turns his head and hits him [Holley], aims the car straight at him." The impact from the first collision threw Holley from the right side of the alley to the left. The truck ran over Holley as he was laying on his back on the pavement. It did not stop. The truck's headlights stayed off until the driver left the alley at Fuchsia Street.

Appellant's passenger, Tereso Jimenez, testified that appellant did not explain why he made the U-turn and drove back to the alley. Jimenez didn't ask questions. He thought the

3

collision was an accident because appellant had no reason to hit Holley intentionally. Nothing that happened that evening would have caused anger or aggression. Once in the alley, appellant steered the truck to the right, then to the left and back to the right. They hit Holley twice. After hitting Holley, appellant said, "'Fuck, I got him,'" or "'I got that fool.'"

According to an accident reconstruction expert with the Oxnard Police Department, tire marks in the alley demonstrate that appellant's vehicle was accelerating, not slowing, before the impact. A California Highway Patrol officer testified that he thoroughly inspected the pickup truck. He found no mechanical issues with the steering, throttle, brakes, tires, wheels or lights that would affect a driver's ability to operate it safely.

The investigating detective from the Oxnard Police Department reviewed extensive security camera video of appellant and his pickup truck as he entered and exited the parking lot. He saw no indication that appellant was under the influence of alcohol or another substance. Until appellant drove into the alley and turned off his headlights, he was driving safely. He was wearing his seatbelt, and he used the turn indicator light as he entered and exited the parking lot, and as he made the left turn on to Azalea Street immediately before turning into the alley. Surveillance camera video from the deli showed that appellant was not staggering or swaying while walking in the store. He had no difficulty retrieving his wallet or getting the correct bills for his purchase.

Appellant testified that he had been drinking whiskey and beer with Jimenez all afternoon. When they got to the deli, appellant saw the women in the parking lot and was able to get Lidia Quiroz's phone number. After he bought more alcohol, he

4

started driving home. Appellant decided to go back and drive through the alley because he was hoping to find Quiroz there and invite her to his place for the night. He wanted to sneak up on Quiroz, to make a "dramatic entrance," so he turned off the headlights and gunned the engine. Then he lost control of the truck, swerved and hit Holley. He drove away because he panicked.

## Discussion

The trial court instructed the jury on the charged offense of first degree murder, (§ 187, subd. (a)), and the lesser included offenses of second degree murder (§ 189, subd. (b)), and involuntary manslaughter. (§ 192, subd. (b).) At appellant's request, the jury was further instructed, in terms of CALCRIM No. 625, that it could consider his voluntary intoxication "only in deciding whether [appellant] acted with an intent to kill, or the defendant acted with deliberation and premeditation. [¶] [¶] You may not consider evidence of voluntary intoxication for any other purpose."[2] (CALCRIM No. 625.)

Appellant contends the voluntary intoxication instruction deprived him of due process and prevented him from presenting a

---

[2] The instruction states, "You may consider evidence, if any, of the defendant's voluntary intoxication only in a limited way. You may consider that evidence only in deciding whether the defendant acted with an intent to kill, or the defendant acted with deliberation and premeditation . . . . [¶] A person is *voluntarily intoxicated* if he or she becomes intoxicated by willingly using any intoxicating drug, drink, or other substance knowing it could produce an intoxicating effect, or willingly assuming the risk of that effect. [¶] You may not consider evidence of voluntary intoxication for any other purpose." (CALCRIM No. 625.)

defense because it did not permit the jury to consider evidence of voluntary intoxication to negate the mental state required for implied malice second degree murder. He further contends he received ineffective assistance from his trial counsel because counsel did not request that the voluntary intoxication instruction be modified to apply implied malice second degree murder.

CALCRIM No. 625, the voluntary intoxication instruction, is based on Penal Code section 29.4, which provides, "Evidence of voluntary intoxication is admissible solely on the issue of whether or not the defendant actually formed a required specific intent, or, when charged with murder, whether the defendant premeditated, deliberated, or harbored express malice aforethought." (*Id.*, subd. (b).) Appellant contends section 29.4, subdivision (b) deprives him of due process and the right to present a defense because it prevents the jury from considering his voluntary intoxication in deciding whether he was capable of acting with conscious disregard for life when he drove down the alley. We are not persuaded.

In *Montana v. Egelhoff* (1996) 518 U.S. 37, the United States Supreme Court upheld against a due process challenge a Montana statute providing, "that voluntary intoxication 'may not be taken into consideration in determining the existence of a mental state which is an element of [a criminal] offense.'" (*Id* at pp. 39-40.) The Court explained that a state could, without violating due process, define the elements of an offense in a way that made evidence of voluntary intoxication irrelevant. It could not, however, define an offense to make intoxication relevant and then enact a statute excluding that entire category of relevant, exculpatory evidence. (*Id.* at pp. 57-58.)

6

*People v. Soto* (2018) 4 Cal.5th 968 (*Soto*) considered whether section 29.4 complied with the due process principles outlined in *Montana*. S*oto* explained that section 29.4 excludes evidence of voluntary intoxication "on the question of whether a defendant believed it necessary to act in self-defense." (*Soto*, *supra*, at p. 970.) Our Supreme Court then rejected a due process challenge to the statute, concluding that it reflects ""a legislative determination that, for reasons of public policy, evidence of voluntary intoxication to negate culpability shall be strictly limited," and "nothing in the enactment . . . deprives a defendant of the ability to present a defense or relieves the People of their burden to prove every element of the crime charged beyond a reasonable doubt . . . ." . . ."" (*Id.* at p. 981, quoting *People v. Carlson* (2011) 200 Cal.App.4th 695, 707-709 (*Carlson*), quoting *People v. Martin* (2000) 78 Cal.App.4th 1107, 1117 (*Martin*).) "The Legislature has decided, for policy reasons, that evidence of voluntary intoxication is irrelevant to proof of certain mental states. The Legislature may validly make that policy decision." (*Soto*, *supra*, at p. 981.)

*Soto* relied on three court of appeal opinions, each of which held that former section 22 (current section 29.4) does not violate due process by excluding evidence of voluntary intoxication on the question of whether a defendant acted with implied malice. (*Carlson*, *supra*, 200 Cal.App.4th 695; *Martin*, *supra*, 78 Cal.App.4th 1107; *People v. Timms* (2007) 151 Cal.App.4th 1292.) As the court noted in *Timms*, section 29.4 declares that "voluntary intoxication is irrelevant to proof of the mental state of implied malice or conscious disregard. Therefore, it does not lessen the prosecution's burden of proof or prevent a defendant

from presenting all relevant defensive evidence." (*Timms*, *supra*, at pp. 1300-1301.)

We are bound to follow *Soto*. (*Auto Equity Sales*, *Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) Consequently, we reject appellant's contention. "[S]ection 29.4 prohibits the use of evidence of voluntary intoxication to establish that a defendant acted without implied malice." (*Soto*, *supra*, 4 Cal.5th at p. 975.) The statute does not violate due process because it reflects a legislative determination that voluntary intoxication is irrelevant to proof of that mental state. (*Id*. at p. 981.) The trial court here did not err in so instructing the jury.

For the same reason, we reject appellant's contention that his trial counsel was ineffective because counsel failed to request "expanded consideration" of voluntary intoxication evidence. Any such request would have been futile. CALCRIM No. 625 correctly explains section 29.4, and section 29.4 does not violate due process. "Counsel may not be deemed incompetent for failure to make meritless objections." (*People v. Coddington* (2000) 23 Cal.4th 529, 625, overruled on another ground in *Price v. Superior Court* (2001) 25 Cal.4th 1046, 1069.)

*Conclusion*

The judgment is affirmed.

NOT TO BE PUBLISHED.

YEGAN, Acting P. J.

We concur:

PERREN, J.

TANGEMAN, J.

8

David R. Worley, Judge

Superior Court County of Ventura

_____

Sylvia W. Beckham, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Jaime L. Fuster, Joseph P. Lee, Deputy Attorneys General, for Plaintiff and Respondent.