Filed 8/27/14  P. v. Najera CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JOSE NAJERA,<br><br>    Defendant and Appellant. | D063875<br><br><br><br>(Super. Ct. No. SCN304993) |

APPEAL from a judgment of the Superior Court of San Diego County, Kathleen M. Lewis, Judge.  Affirmed.

Dacia A. Burz, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Randall D. Einhorn and Peter Quon, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Jose Najera was convicted of second degree murder (Pen. Code, § 187, subd. (a); count 1), gross vehicular manslaughter while intoxicated (Pen.

Code, § 191.5, subd. (a); count 2) with a multiple victim bodily injury allegation (Veh. Code, § 23558), driving under the influence causing injury (Veh. Code, § 23153, subd. (a); count 3) with two great bodily injury allegations (Pen. Code, § 12022.7, subd. (a)), evading a police officer causing death (Veh. Code, § 2800.1, subd. (a); count 4) with two great bodily injury allegations (Pen. Code, § 12022.7, subd. (a)), unlawful taking and driving a vehicle (Veh. Code, § 10851, subd. (a); count 5), and possession of a controlled substance (Health & Saf. Code, § 11377; count 6). The People also pled and proved five prison priors (Pen. Code, §§ 667.5, subd. (b) & 668), a serious felony prior (Pen. Code, §§ 667, subd. (a)(1), 668, & 1192.7, subd. (c)), and a strike prior (Pen. Code, § 667, subds. (b)-(i)). Najera was sentenced to serve an indeterminate term of 45 years to life in state prison.[1]

Najera now appeals. First, he contends the trial court erred in refusing to provide the jury with an instruction he proposed on implied malice; second, in a related argument, he contends Penal Code former section 22 unconstitutionally prevented him from presenting evidence of his intoxication; third, he argues the trial court erred in denying his motion to dismiss his strike prior; finally, Najera contends his driving under the influence causing injury conviction on count 3 is a lesser included offense of his manslaughter conviction on count 2 and should therefore be dismissed. We find no error: Najera's proposed instruction included language that has been rejected by the Supreme

---

[1]     Thirty years to life on count 1 (15 years doubled for Najera's strike prior), six years on count 5 (the upper term of three years, doubled) to run consecutive with count 1, four consecutive one-year terms for four of Najera's prison priors (the first having been stayed), and five years for Najera's serious felony prior, for a total of 45 years to life. Sentence on all other counts was either ordered to run concurrent with the above (count 6) or was stayed.

2

Court and could be refused on that ground alone; Penal Code former section 22 defines criminal culpability and does not limit the admissibility of evidence with respect to that culpability; given the nature of Najera's strike and his current convictions, the trial court did not abuse its discretion in denying his motion to strike; finally, where, as here, the defendant has killed one victim and injured others, the defendant may be convicted of both manslaughter and driving under the influence causing injury. Accordingly, we affirm the judgment of conviction.

## FACTUAL AND PROCEDURAL BACKGROUND

On the morning of April 25, 2007, Najera was driving a stolen car. He had two passengers: his friend, David Lopez, and Lopez's girlfriend, Rachel Gaxiola. At approximately 9:00 a.m., San Diego County Sherriff's deputies attempted to stop Najera's car, having received a report it was stolen. Najera initially pulled the car over to the side of the road but then made a sharp U-turn and rapidly accelerated; Najera narrowly missed oncoming traffic and drove on the wrong side of a divided roadway at speeds up to 80 miles per hours for just under a minute. The chase finally ended when Najera collided head-on with a 76-year-old motorist, Jean Cooke.

During the pursuit, Gaxiola asked Najera if she could get out of the car, and both she and Lopez removed their seatbelts. At one point, Lopez opened his door.[2] All three

---

[2]     Additionally, one of the sheriff's deputies involved with the investigation testified that, in the hospital, Gaxiola had told him that as Najera made his initial U-turn, Lopez had asked to be let out of the car and had attempted to exit it but was pulled back in by Najera. Other deputies also reported seeing Lopez's door open and his arm and leg hang out of the car while Najera made his U-turn. Gaxiola testified that she had no memory of Lopez asking to get out of the car, of Najera pulling Lopez back into the car, or of making a statement to investigators while in the hospital.

occupants were still in the car, however, when it collided with Cooke's car.

All four people involved in the collision were taken to the hospital, where Lopez was pronounced dead. Gaxiola had several severe bone fractures; she spent the next two and a half months in the hospital and was still in "constant pain" at the time of the trial. Cooke also suffered several broken bones and a collapsed lung; she still experienced symptoms of her injuries, including difficulty standing, at the time of trial.

Najera was treated for several fractures and lacerations. Najera admitted to doctors at the hospital that he had used methamphetamine the evening before the collision and heroin approximately five hours before the collision. These admissions were confirmed by later blood tests and consistent with the fact that a usable amount of methamphetamine was found in his pants pocket.

As we indicated, at trial Najera proposed and the trial court rejected a jury instruction that distinguished the implied malice needed to commit murder from gross negligence. The jury returned a verdict of guilty on all counts and true findings on the bodily injury allegations; in separate proceedings, the trial court found true all the prior conviction and prison term allegations.

At the time of sentencing, Najera moved to strike his prior felony conviction under *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 528 (*Romero*). The court denied his motion and sentenced him to an indeterminate term of 45 years to life.

## DISCUSSION

### I

### Proposed Jury Instruction

We first address Najera's contention that the lower court erred in refusing his

4

proposed jury instruction regarding the distinction between gross negligence and implied malice. We review alleged instructional error de novo. (*People v. Posey* (2004) 32 Cal.4th 193, 218.) As Najera correctly notes, "the general rule is that a trial court mayrefuse a proffered instruction if it is an incorrect statement of law, is argumentative, or is duplicative." (*People v. Gurule* (2002) 28 Cal.4th 557, 659.) Here, the proposed instruction contained an incorrect statement of law and could be rejected on that ground.

Preliminarily, we note that, the trial court gave the jury a version of CALCRIM No. 520 with respect to implied malice, which stated that Najera acted with implied malice if he: "One, intentionally committed an act; two, the natural and probable consequences of the act were dangerous to human life; three, at the time he acted he knew his act was dangerous to human life; and, four, he deliberately acted with conscious disregard for human life." In contrast, Najera's proposed instruction defined implied malice as requiring that Najera "*knew* his driving actually created a *high probability* that there would be *a death or serious bodily injury*."[3] (Italics added.) In doing so, the

---

[3]   Najera's proposed instruction stated: "Gross Negligence v. Implied Malice  [¶] Murder, based upon implied malice, and gross vehicular manslaughter, based on criminal negligence, both involve an unintentional killing. 'Malice' required for murder differs from 'gross or criminal negligence' required for manslaughter.  [¶] You have been instructed in the law of second degree implied malice murder.  You have also been instructed as to the law of gross vehicular manslaughter while intoxicated.  The difference between the two offenses is best explained as the difference between a subjective standard and an objective standard or, stated another way, the difference between what the defendant actually knew [subjective standard], and what the defendant should have known [objective standard] but did not actually know.  [¶] 'Implied malice' is found by applying a subjective test: that test is whether defendant actually and personally knew of the high probability of death or serious injury from his actions, and consciously disregarded it. 'Gross negligence' is found by applying an objective test: that test is whether a reasonable person in the defendant's position would have been aware of the high risk involved.  [¶] If, after evaluating all the evidence you are left believing

5

proposed jury instruction included language expressly disapproved by the court in *People v. Knoller* (2007) 41 Cal.4th 139, 142 (*Knoller*).

In *Knoller*, the defendant was convicted of second degree murder when two very large dogs she owned attacked and killed a neighbor while the defendant was walking them. Our Supreme Court rejected the trial court's conclusion that, to be guilty of murder under a theory of implied malice, the defendant must have *known* that her conduct involved "'a *high probability of death* to another human being.'" (*Knoller*, *supra*, 41 Cal.4th at p. 157.) The court also rejected the Court of Appeal's alternative conclusion that "implied malice can be based simply on a defendant's conscious disregard of the risk of *serious bodily injury to another*." (*Id*. at p. 142.) The court stated: "Malice is implied when the killing is proximately caused by "'an act, the natural consequences of which are dangerous to life, which act was deliberately performed by a person who knows that his conduct endangers the life of another and who acts with conscious disregard for life.'"

---

beyond a reasonable doubt that the defendant knowingly became intoxicated before he knowingly drove a vehicle in a manner which *he knew* posed a significant threat to others of death or serious bodily injury, he can be found guilty of second degree murder. If, on the other hand, you are left believing beyond a reasonable doubt that *he should have known* that intentionally using an intoxicating substance before knowingly driving a vehicle in a manner which he should have known was dangerous to human life, but you are left with a reasonable doubt as to his subjective awareness of the high risk of death or serious bodily injury, he can be found guilty of gross vehicular manslaughter, but not murder. [¶] Stated another way, in order to prove murder here, the prosecution must prove beyond a reasonable doubt that at the time defendant was driving, he knew his driving actually created a high probability that there would be a death or serious bodily injury, and that the defendant consciously disregarded this possibility. If, after consideration of all the evidence, you have a reasonable doubt as to whether the defendant had the requisite subjective awareness, as required by this instruction, you must give the defendant the benefit of that doubt and find him Not Guilty of murder, but Guilty of gross vehicular manslaughter if he should have known of the danger of death or serious bodily injury." (Original italics, underscoring added.)

[Citation.]  In short, implied malice requires a defendant's awareness of engaging in conduct that endangers the life of another—no more, and no less."  (*Id*. at p. 143.)  The court once again endorsed an instruction, taken from *People v. Phillips* (1966) 64 Cal.2d 574, 587 (*Phillips*), which implies malice when killing is proximately caused by """an act, the natural consequences of which are dangerous to life, which act was deliberately performed by a person who knows that his conduct endangers the life of another and who acts with conscious disregard for life."""  (*Knoller*, *supra*, at p. 157.)

The *Knoller* court held that requiring that the defendant *know* her conduct involved a *high probability* of causing the death of another was improper because it converted the objective standard set forth earlier by Justice Traynor in his concurring opinion in *People v. Thomas* (1953) 41 Cal.2d 470, 480 (*Thomas*) to a subjective standard.  Under the *Thomas* test, malice may be implied when a defendant with "a base, antisocial motive and with wanton disregard for human life[] does an act that involves a high degree of probability that it will result in death."  (*Ibid*.)  As the court in *Knoller* explained, neither the *Thomas* test nor the preferred formulation set forth in *Phillips* require that the defendant subjectively know his or her conduct involved a high probability of death.  (*Knoller*, *supra*, 41 Cal.4th at p. 157.)

In addition to the trial court's error in conflating the objective and subjective elements of the *Thomas* test, the court found that, in any event, because of its obscure phraseology, courts should no longer apply the *Thomas* formulation but instead should instruct juries with the more straightforward *Phillips* test. (*Knoller*, *supra*, 41 Cal.4th at p. 157.)  CALCRIM No. 520 and the version given to the jury here articulate the *Phillips* test.

7

The *Knoller* court also found the appellate court's definition, which only required conduct that involves a risk of serious bodily injury, was too low a standard and was likewise an incorrect statement of law. (*Knoller*, *supra*, 41 Cal.4th at p. 156.)

Here, Najera's proposed instruction was defective under *Knoller*. In repeating the high probability standard, the proposed instruction was more akin to the *Thomas* test than the preferred *Phillips* formulation, which the trial court here provided to the jury. More importantly, like the trial court's defective standard in *Knoller*, Najera's proposed instruction improperly required proof Najera *knew* there was a high probability his driving would cause death. (See *Knoller*, *supra*, 41 Cal.4th at p. 157.) All that is required is knowledge that the conduct endangers life. (*Ibid.*) Like the Court of Appeal's defective alternative formulation in *Knoller*, Najera's instruction would also improperly suggest to the jury that they could find implied malice where, instead of a likelihood of death, there was only a likelihood of serious bodily injury.

In sum, because Najera's instruction was legally defective on each of the grounds discussed by the court in *Knoller*, the trial court had no obligation to give it. (See *People v. Gurule*, *supra*, 28 Cal.4th at p. 659.)

II

Penal Code former section 22[4]

In a closely related argument, Najera argues that former section 22 unconstitutionally excludes exculpatory evidence and prevented him from showing that,

---

[4]     Effective January 1, 2013, Penal Code former section 22 was renumbered as Penal Code section 29.4. (Stats. 2012, ch. 162, § 119.) All further statutory references are to the Penal Code unless otherwise indicated.

in light of his intoxication, he was not acting with the implied malice needed to prove second degree murder. We find no defect in former section 22.

Najera relies on *Montana v. Egelhoff* (1996) 518 U.S. 37 (*Egelhoff*), where the United States Supreme Court upheld a Montana law substantially similar to former section 22. In her controlling concurring opinion, Justice Ginsberg reasoned that a law barring evidence of voluntary intoxication could be unconstitutional if it merely sought to exclude relevant evidence, but it would not be if it redefined the mens rea requirement of crimes. She found the Montana law did the latter as it was found in Montana's criminal, as opposed to evidentiary, code sections, and because it "'extract[s] the entire subject of voluntary intoxication from the mens rea inquiry.'" (*Egelhoff*, at pp. 57-58 (conc. opn. of Ginsberg, J.).) Justice Ginsberg noted that such a redefinition was within the Legislature's power and did not relieve the prosecution of their burden to prove a mental state, as it still required them to prove either "(1) the defendant caused the death of another with actual knowledge or purpose, *or* (2) that the defendant killed 'under circumstances that would otherwise establish knowledge or purpose "but for" [the defendant's] voluntary intoxication.'" (*Id*. at p. 58 (conc. opn. of Ginsberg, J.).)

As the court in *People v. Timms* (2007) 151 Cal.App.4th 1292 determined, former section 22, like the Montana statute, is consistent with due process and the requirements of *Egelhoff*. "Section 22 does not appear in the Evidence Code, it appears in the Penal Code under the 'Preliminary Provisions,' along with statutes defining and setting forth the kinds and degrees of crimes and their punishment (§§ 16–19.8), the requirement of act and intent or negligence (§ 20), the elements of attempt (§ 21a), etc. Since 1872, the first sentence of section 22 (now at subdivision (a)) has declared the policy of this state that an

9

act is not less criminal because the actor committed it while voluntarily intoxicated. This means that, with respect to the same conduct, an intoxicated person shoulders the same criminal responsibility as a sober person. The next sentence declares the substantive law that voluntary intoxication is not available to a defendant as a basis for a diminished capacity defense. Subdivision (b) of section 22 establishes, and limits, the exculpatory effect of voluntary intoxication on the required mental state for a particular crime. It permits evidence of voluntary intoxication for limited exculpatory purposes on the issue of specific intent or, in murder cases, deliberation, premeditation and express malice aforethought. The absence of implied malice from the exceptions listed in subdivision (b) is itself a policy statement that murder under an implied malice theory comes within the general rule of subdivision (a) such that voluntary intoxication can serve no defensive purpose. In other words, section 22, subdivision (b) is not 'merely an evidentiary prescription'; rather, it 'embodies a legislative judgment regarding the circumstances under which individuals may be held criminally responsible for their actions.' (*Egelhoff*, *supra*, 518 U.S. at p. 57 (conc. opn. of Ginsburg, J.).) In short, voluntary intoxication is irrelevant to proof of the mental state of implied malice or conscious disregard. Therefore, it does not lessen the prosecution's burden of proof or prevent a defendant from presenting all relevant defensive evidence." (*People v. Timms*, *supra*, at p. 1300.)

We agree with the court in *People v. Timms* as well as the court in *People v. Martin* (2000) 78 Cal.App.4th 1107, 1117, which reached the same conclusion: former section 22 is a legitimate exercise of the Legislature's authority to redefine the elements of crimes and not an attempt to impermissibly exclude exculpatory evidence. Accordingly, former section 22 does not infringe on a defendant's right to due process.

10

## III

## Denial of *Romero* Motion

In deciding whether to dismiss a prior felony for purposes of applying the three strikes law, a court "'must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies.' [Citation.]" (*People v. Carmony* (2004) 33 Cal.4th 367, 377.) "The striking of a prior serious felony conviction is not a routine matter. It is an extraordinary exercise of discretion, and is very much like setting aside a judgment of conviction after trial." (*People v. Jackson* (1986) 178 Cal.App.3d 694, 697-698.)

We review an order denying a motion to dismiss a prior strike for abuse of discretion. (*People v. Carmony*, *supra*, 33 Cal.4th at p. 375.) "[A] trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Id*. at p. 377.) "'[I]t is not enough to show that reasonable people might disagree about whether to strike one or more' prior conviction allegations. [Citation.] Where the record is silent [citation], or '[w]here the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling, even if we might have ruled differently in the first instance' [citation]." (*Id*. at p. 378.)

Najera's prior strike was for conspiracy to commit a crime within the meaning of section 182, subdivision (a), and concerned his role in a plan to bring drugs into the Vista

11

Detention Facility using his girlfriend, who was a gang associate, as an intermediary. Najera was sentenced to three years in prison on the prior conviction. The probation report stated that Najera is a member of the Various Carlsbad Locos street gang. In describing Najera's criminal history, including the conspiracy conviction, the trial court stated: "And although the facts of the strike prior are not particularly egregious, they are similar to the facts in the other cases and involve drugs and jail and gangs are all part of the same picture leading up to the current events. [¶] The defendant has also suffered five prison priors as well as other felonies and misdemeanors. He's never performed well on parole or probation supervision. He's never had a significant period outside of custody since he was a juvenile. And he was out on another 211 case at the time -- pending trial at the time this case occurred. Therefore, the strike remains and *Romero* motion is denied. Thus, prison is mandatory."

Najera contends the lower court abused its discretion because his prior felony conviction was not "particularly egregious" and because the circumstances of his current murder conviction were not aggravated, his victims were not particularly vulnerable, and his commission of the current crimes was not exceptionally cruel or callous. We find no abuse of discretion.

Najera concedes that his prior convictions "show a pattern of drugs . . . theft, and jail" but disputes that they show a pattern of gang activity.[5] We reject Najera's implicit contention that the trial court was likely to have granted the motion to dismiss his prior

---

[5]     The People point out that Najera has not disputed the findings in the probation officer's report that he has been in a gang since 1995 or that many of his prior convictions involved one or more codefendants.

strike had his past activity merely disclosed a pattern of drugs and jail but not if it disclosed a pattern of "drugs and jail and gangs." In any event, the trial court clearly weighed the relative egregiousness of Najera's strike prior and determined that it was outweighed by Najera's subsequent continuing criminal activity.

Najera next contends that the lower court abused its discretion by finding that "the facts in this case . . . were aggravated." Najera infers a finding by the court below that Najera's victims were especially vulnerable within the meaning of California Rules of Court, rule 4.421(a)(3). This is a mischaracterization of the trial court's reasoning and therefore unhelpful in our review of its exercise of discretion. The trial court, in setting out its reasons for declining to set aside Najera's prior strike offense, makes no reference to the victims' vulnerability.

Najera further contends that there was insufficient evidence for the trial court to conclude that Najera's crimes were aggravated based on the finding that "[Najera's] passengers wanted to get out of the car and he would not let them." Najera contends that the sole evidentiary basis for this finding was the testimony of the pursuing deputies who witnessed Lopez hang out of the car door before being pulled in and one deputy's testimony that Gaxiola had told him that Lopez had asked to exit the car. This argument ignores Gaxiola's own testimony that she herself had asked to exit the car, that she and Lopez had then unfastened their seatbelts and that Lopez had opened his door. Thus, there was ample evidence that Lopez and Gaxiola had wanted to get out of the vehicle but were prevented from doing so by Najera's conduct.

In sum, the trial court properly considered "the nature and circumstances of [Najera's] present felony, the nature and circumstances of the prior strike, [and] the

13

background, character and prospects of [Najera]"[6] and found that Najera "falls squarely within the strikes law." The trial court acted well within the discretion provided to it.

IV

Separate Offenses

Next, Najera contends that his conviction for driving under the influence causing injury (Veh. Code, § 23153, subd. (a); count 3) is defective because he believes it is a lesser included offense of his conviction for gross vehicular manslaughter while intoxicated (Pen. Code, § 191.5, subd. (a); count 2). Najera relies on *People v. Binkerd* (2007) 155 Cal.App.4th 1143 and *People v. Miranda* (1994) 21 Cal.App.4th 1464, which held that Penal Code section 23153, subdivision (a) was a lesser included offense of vehicular manslaughter where the same victim was alleged in each count. Those cases do not stand for the proposition that a defendant is, by dint of the death of one of his victims, immunized from punishment for his injuring other victims.

In the present case, no victim was specified in count 3, however, in the final amended information, section 12022.7, subdivision (a) allegations were included for both Cooke and Gaxiola, but not for Lopez. "[W]here, as here, a defendant commits vehicular manslaughter with gross negligence -- an act of violence against the person -- he may properly be punished for injury to a separate individual that results from the same incident." (*People v. McFarland* (1989) 47 Cal.3d 798, 804, fn. omitted.) We note that, even if there are multiple victims, one drunk driving incident can only give rise to one

---

6    The court made specific reference to Najera's escalating criminal activity, drug use during the commission of the instant offense, voluminous criminal record, poor record on parole, and pending robbery charge at the time of the instant offense.

count of driving under the influence causing injury. (*Wilkoff v. Superior Court* (1985) 38 Cal.3d 345, 348.) We therefore deem count 3 to relate to all parties injured in the accident. The jury made true findings on allegations that, while driving under the influence, Najera injured both Cooke and Gaxiola. Neither Cooke nor Gaxiola died as a result of their injuries. Therefore, count 3 as it relates to Cooke and Gaxiola is not a lesser included offense of the gross vehicular manslaughter of Lopez, and multiple punishment is therefore appropriate. (*People v. McFarland*, *supra*, at pp. 805-806.)

DISPOSITION

The judgment of conviction is affirmed.

BENKE, Acting P. J.

WE CONCUR:

NARES, J.

AARON, J.

15