Filed 12/29/15  P. v. Long CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D068488 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SWF1103182) |
| DAYLE WILLIAM LONG, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Riverside County, Angel M. Bermudez, Judge.  Affirmed.

Christine Vento, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Randall D. Einhorn and Quisteen S. Shum, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Dayle William Long of second degree murder. (Pen. Code,[1] § 187, subd. (a).) The jury also found true an allegation that Long personally and intentionally discharged a firearm causing death or great bodily injury. (§ 12022.53, subd. (d).) The court sentenced Long to an indeterminate term of 40 years to life in prison.

Long appeals contending only that the trial court erred in failing to instruct that voluntary intoxication could be considered with regard to the mental state of implied malice. Long recognizes that section 22[2] does not permit such instruction. However relying on his interpretation of a concurring opinion of Justice Ginsburg in *Montana v Egelhoff* (1996) 518 U.S. 37 (*Egelhoff*), Long argues section 22 is unconstitutional and all of the California cases which hold to the contrary were wrongly decided. Lastly, he contends his trial counsel was ineffective because counsel did not request the instruction, which appellate counsel deems essential.

We are satisfied that the cases which have rejected Long's arguments were correctly decided and we will follow them. We will also find the record does not support a claim of ineffective assistance of trial counsel.

---

[1]    All further statutory references are to the Penal Code unless otherwise specified.

[2]    Section 22 was renumbered in 2013 to section 29.4. (Stats. 2012, ch. 162, § 119, p. 2621.) We will continue to refer to section 22 which was the section number at the time of the offense.

STATEMENT OF FACTS

Although the appellant's opening brief sets forth 32 pages of facts, Long does not challenge the admissibility or the sufficiency of the evidence to support his conviction. The questions presented in this appeal are purely questions of law, unaffected by the facts of the offense. Accordingly, we will set forth a much shorter summary of the facts in order to provide background for the discussion which follows.

The offense in this case occurred in a bar where Long, an off duty Riverside County Sheriff's Deputy, had been drinking for several hours. At some point Long's interaction with several bar patrons deteriorated, leading to an argument, which tragically ended with Long shooting one of the patrons.

At around 3:00 p.m. on December 21, 2011, Long arrived at Spelly's restaurant in Murietta. Long met a friend at the bar and they sat and drank alcoholic beverages for a while.

At about 4:00 p.m. April Reilly,[3] her brother Sam Vanettes, Danny Burnside, and Chris Hull arrived at Spelly's. After a while April's group made contact with Long and the two groups played darts and drank together.

Long's friend left the bar at about 6:45 p.m. Around 8:00 p.m., the relationship between Long and April's group began to deteriorate. Long and Sam got into a heated argument about whether certain streets in Orange County intersected each other.

---

[3]    In the same fashion as the parties have done in their briefs, we will refer to the patrons who arrived by their first names for convenience. No disrespect is intended.

April testified that Long was intoxicated, grouchy and slurred his words. He had a "mean" expression on his face. April said that at some point Long appeared to challenge Sam to a fight. April and Danny attempted to intercede. Danny noticed Long had a gun. Long said he was a "cop."

Sam attempted to calm things down and approached Long. Sam put his hand on Long's shoulder and hip in a nonaggressive fashion. Long pushed Sam away and pulled out his gun.

Long held his gun with two hands, extended his arms and pointed the gun at Sam. Sam told him to put the gun away, but Long fired three rapid shots at Sam, paused and fired two more shots. Sam died of gunshot wounds to his chest, abdomen and his face.

The defense called several witnesses to impeach the version given by the victim's friends. Long also testified on his own behalf.

Long said he was a trained law enforcement officer who had been trained on how to react to dangerous situations. He said at one point Chris threatened to take his gun away and kill him. Long said he was afraid of the threats. Long thought Sam was going to grab his gun and that he fired because he was afraid.

The defense also called an expert in use of force by police. Based on a hypothetical that mirrored the facts of this case, the expert opined that Long's use of force was proper in this case.

DISCUSSION

I

*SECTION 22 IS CONSTITUTIONAL*

Long contends he was denied due process and the Sixth Amendment rights to present a defense and to enjoy the effective assistance of counsel. He argues that section 22 is unconstitutional because it denied him the right to have the jury consider the effect of his voluntary intoxication on his ability to harbor implied malice. He contends the jury should have been able to consider the impact of his voluntary intoxication on whether he acted with conscious disregard for human life.

By way of preface, Long's defense at trial was not that he was intoxicated. In fact he denied he was drunk. Rather his defense was he acted properly in self-defense based upon his law enforcement training. The trial court did give an instruction that the jury could consider voluntary intoxication as it might relate to express malice and the related intention to kill a human being.[4]

---

[4] The trial court gave the jury CALCRIM No. 3426, as follows: "You may consider evidence, if any, of the defendant's voluntary intoxication only in a limited way. You may consider that evidence only in deciding whether the defendant acted with intent to kill. [¶] A person is voluntarily intoxicated if he or she becomes intoxicated by willingly using any intoxicating drug, drink, or other substance knowing that it could produce an intoxicating effect, or willingly assuming the risk of that effect. [¶] In connection with the charge of murder or the lesser included offense of manslaughter, the People have the burden of proving beyond a reasonable doubt that the defendant acted with intent to kill. If the People have not met this burden, you must find the defendant not guilty. [¶] In connection with the charge of first degree murder, the People have the burden of proving beyond a reasonable doubt that the defendant acted with premeditation and deliberation. If the People have not met this burden, you must find the defendant not guilty."

A.  Legal Principles

In 1994, the California Supreme Court held that evidence of voluntary intoxication was admissible with regard to the mental state of implied malice.  (*People v. Whitfield* (1994) 7 Cal.4th 437, 451.)  The following year the Legislature amended section 22 to limit the relevance of voluntary intoxication to express malice.  Express malice being found in the intention to unlawfully kill a human being.  Section 22 as enacted in 1995 provides:

> "(a) No act committed by a person while in a state of voluntary intoxication is less criminal by reason of his or her having been in that condition.  Evidence of voluntary intoxication shall not be admitted to negate the capacity to form any mental states for the crimes charged, including, but not limited to, purpose, intent, knowledge, premeditation, deliberation, or malice aforethought, with which the accused committed the act.  [¶] (b) Evidence of voluntary intoxication is admissible solely on the issue of whether or not the defendant actually formed a required specific intent, or, when charged with murder, whether the defendant premeditated, deliberated, or harbored express malice aforethought.  [¶] (c) Voluntary intoxication includes the voluntary ingestion, injection, or taking by any other means of any intoxicating liquor, drug, or other substance."

In *People v. Martin* (2000) 78 Cal.App.4th 1107, 1114, the court held "[i]t is clear that the effect of the 1995 amendment to section 22 was to preclude evidence of voluntary intoxication to negate implied malice aforethought."  Other appellate courts have reached the same conclusion.  (*People v. Carlson* (2011) 200 Cal.App.4th 695, 705-706 [Fourth District, Division Three]; *People v. Turk* (2008) 164 Cal.App.4th 1361, 1375 [Fourth District, Division One]; and *People v. Timms* (2007) 151 Cal.App.4th 1292, 1298 (*Timms*) [First District, Division Four].)

6

Although the California Supreme Court has not directly addressed this issue, in a footnote, which is arguably dicta, in *People v. Boyer* (2006) 38 Cal.4th 412, 469, footnote 40, the court observed: "In 1995, section 22 was amended to provide prospectively that when the charge is murder, 'voluntary intoxication is admissible solely on the issue . . . whether the defendant premeditated, deliberated, or harbored express malice aforethought.' [Citation.] Hence, depending on the facts, it now appears that defendant's voluntary intoxication, even to the point of actual unconsciousness, would not prevent his conviction of second degree murder on an implied malice theory, or of voluntary manslaughter, based on his or her potentially lethal act, committed with 'conscious disregard' for life, in response to provocation or as the result of an honest, though unreasonable belief in the need for self-defense."

In *People v. Atkins* (2001) 25 Cal.4th 76, 93, the court rejected the argument that exclusion of evidence, under section 22, of the defendant's voluntary intoxication "violate[d] his due process rights by denying him the opportunity to prove he did not possess the required mental state." In *People v. Sorden* (2005) 36 Cal.4th 65, 72, the court reaffirmed the view it took in *Atkins,* relying on the United States Supreme Court decision in *Egelhoff, supra,* 518 U.S. at pages 39 to 40 and 56.

In *Egelhoff, supra,* 518 U.S. 37, a plurality of the court concluded that consistent with long established common law, a state could restrict the use of evidence to limit culpability for criminal acts done while voluntarily intoxicated. The crime at issue was murder defined as intentional and purposeful killing. The court held that Montana's rule precluding the use of evidence of voluntary intoxication for such offense did not violate

7

principles of due process, as the common law has long limited the use of evidence of voluntary intoxication to limit culpability. (*Id.* at p. 56.)

In her separate opinion, Justice Ginsburg concurred in the result because she interpreted Montana's statute to redefine the elements of homicide, which it was constitutionally entitled to do. (*Egelhoff, supra,* 518 U.S. at pp. 57-60 (conc. opn. of Ginsburg, J.).)

In this case, Long contends that the amendment to section 22 was merely an evidentiary rule and thus impermissibly limited the availability of relevant, exculpatory evidence and is therefore unconstitutional. That argument was specifically rejected by the court in *Timms, supra*, 151 Cal.App.4th at pages 1300 to 1301. There the court concluded that the amendment limiting the availability of voluntary intoxication as a defense was a policy statement by the Legislature. With regard to homicides with "implied malice," the amendment is a judgment that effects the circumstances under which individuals may be held criminally responsible for their actions. The court found that the amendment of section 22 was consistent with the principles established in *Egelhoff, supra,* 518 U.S. 37. (*Timms, supra*, at p. 1301.)

## B. Analysis

Long candidly recognizes the controlling California authority contrary to his position. At base, he contends the cases are all wrongly decided. Based on a portion of the legislative history of the amendment, Long concludes the amendment establishes an evidentiary rule that would not be acceptable under Justice Ginsburg's concurring opinion in *Egelhoff, supra,* 518 U.S. 37. Respectfully, we disagree.

8

We think the courts, which have previously rejected the same challenge, were correct.  We are certainly in agreement with the decision in *Timms, supra,* 151 Cal.App.4th 1292 where the court concluded the Legislature was making a policy statement on the proper role of voluntary intoxication for crimes committed by persons under such influence.  It is noteworthy that the statute allows such evidence to address the existence of specific intent to kill and the resulting state of expressed malice arising from the specific intent.

The mental state of implied malice arises from conscious disregard of risk to human life.  The Legislature could reasonably conclude that persons who are voluntarily under the influence of intoxicating substances, who commit dangerous acts leading to death of another should not have their culpability reduced.  Such purpose complies with principles of due process as articulated in *Egelhoff, supra,* 518 U.S. 37.  There was no denial of due process or the right to present a defense in this case.

II

*INEFFECTIVE ASSISTANCE OF COUNSEL*

Appellate counsel argues that trial counsel was ineffective for failing to request a jury instruction on voluntary intoxication as it impacts implied malice.  We will not pause long with this argument

First, we have established there was no legal basis for such instruction and that it would have been error for the trial court to give it.  Second, the defense in this case was not intoxication.  The defense was that Long acted reasonably in self-defense.  He was a trained law enforcement officer who was faced with dangerous criminal threats and that

he acted reasonably in light of his extensive training. Long denied that he was intoxicated. He said he was "buzzed," but not drunk.

Nor can we lose sight of the actual events in this case. Long engaged in conflict with the victim and his friends. The problems escalated when Long produced a gun, which aggravated the encounter, rather than calming it. The shooting itself involved Long using a two-hand stance with the pistol with arms extended. He shot the unarmed victim three times, paused briefly and shot him two more times.

The jury was instructed on voluntary intoxication as it related to intent to kill and express malice. They found Long guilty of second degree murder and found he personally, and intentionally discharged his firearm causing death. In our view it is utterly inconceivable that an instruction that voluntary intoxication could negate implied malice would have likely produced a different result.

Where a defendant claims ineffective assistance of counsel the defendant bears the burden of proof. The defendant must establish that counsel performed below the level of competency and that in the absence of the error a different result would have been reasonably likely. (*Strickland v. Washington* (1984) 466 U.S. 668, 687.) In this case, Long has not shown any error by trial counsel and has not shown any reason to think a different result would have been likely.

DISPOSITION

The judgment is affirmed.


                                                    HUFFMAN, Acting P. J.

WE CONCUR:


        McDONALD, J.


        AARON, J.

11